UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATIVE VILLAGE OF NAKNEK,

    Plaintiff,

v.

JONES PACIFIC MARITIME, LLC, et al.,

    Defendants.

CASE NO. C14-5740 BHS

ORDER GRANTING IN PART AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, VACATING ORDER OF RELEASE, AND RELEASING VESSEL

This matter comes before the Court on Defendants Harvey B. Jones and Jones Pacific Maritime, LLC's (collectively "Jones") motion for summary judgment (Dkt. 64). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On September 19, 2014, Plaintiff Native Village of Naknek's ("Naknek") filed a complaint against Defendants Jones *in personam* and the ship F/V *SEAHORSE* ("*SEAHORSE*") *in rem* in an action to clear title to *SEAHORSE* and restore her

ORDER - 1

possession to Naknek. Naknek also moved the Court to arrest *SEAHORSE*. Dkts. 1 & 18. On October 7, 2014, the United States Marshals Service arrested *SEAHORSE* near Cathlamet, Washington.

On December 11, 2014, Naknek moved for judgment on the pleadings. Dkt. 19. On March 16, 2015, the Court denied the motion concluding, in part, that Naknek had failed to show that Washington's "chattel lien law is an improper avenue to foreclose upon SEAHORSE." Dkt. 28 at 6.

On June 1, 2015, the Court ordered the release of *SEAHORSE* under certain conditions. Dkt. 50.

On August 19, 2015, Jones filed a motion for summary judgment. Dkt. 64. On September 8, 2015, Naknek responded. Dkt. 68. On September 11, 2015, Jones replied. Dkt. 74. On September 16, 2015, Naknek filed a motion for leave to file a surreply. Dkt. 75.[1]

## II. FACTUAL BACKGROUND

Naknek hired Jones in 2012 to captain, obtain reparations, and outfit the Naknek's ship *SEAHORSE*, a United States Coast Guard documented vessel. Some repair and outfitting to *SEAHORSE* was performed in Homer, Alaska. Jones recommended completion of further repair in Washington State. Naknek agreed, and the vessel arrived in Port Angeles, Washington, in October of 2012. By December of 2012, Naknek informed Jones that it no longer had funding for the repairs to *SEAHORSE*. Sometime

---

[1] The Court grants the motion and accepts the surreply because Jones is not prejudiced by the improper, additional substantive briefing.

thereafter, Jones moved the vessel to moorage near Cathlamet, Washington, closer to his home.

In fall 2013, Jones filed a lien with the United States Coast Guard for seaman's wages and repair work done to *SEAHORSE*. On March 12, 2014, Jones conducted a private, non-judicial foreclosure sale of *SEAHORSE* pursuant to Washington State chattel lien law, RCW 60.08.010. Although present at the sale, Naknek neither bid nor moved to restrain the sale based on alleged deficiencies in Jones's liens. As the sole bidder, Jones purchased *SEAHORSE* for $100,000 and confirmed the sale with the United States Coast Guard on March 25, 2014. Jones transferred title of *SEAHORSE* to Jones Pacific Maritime, LLC, owned solely by Jones. Jones granted three mortgages, secured by *SEAHORSE,* totaling approximately $225,000 to third parties.

## III. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Jones's Motion**

In this case, Jones moves for summary judgment arguing that Naknek's claims to *SEAHORSE* fail as a matter of law.  Jones presents five arguments in support of their position: (1) federal maritime law does not preempt or otherwise prohibit extrajudicial remedies to enforce maritime liens; (2) Washington law does not prohibit use of its

chattel lien statute against vessels; (3) Naknek has failed to establish any factual basis for conflict between the state and federal statutes; (4) Naknek's redemption argument fails as a matter of law; and (5) the validity and amount of Jones's liens will not result in the return of the vessel to Naknek.  Dkt. 64.

**1.    Preemption**

The Federal Maritime Lien Act provides that it "supersedes any State statute conferring a lien on a vessel to the extent the statute establishes a claim to be enforced by a civil action *in rem* against the vessel for necessaries."  46 U.S.C. § 31307.  The question before the Court is whether this federal statute pre-empts the summary foreclosure provision of Washington's chattel lien statute.

The Court must first look to the explicit language of the federal statute. "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992).  The explicit reach of the Lien Act is limited to claims that are to be enforced by a civil action *in rem* against the vessel.[2]  As the Eleventh Circuit has held, the "limited preemption does not affect the self-help remedies at issue here." *Dietrich v. Key Bank, N.A.*, 72 F.3d 1509, 1513 (11th Cir. 1996).  In other words, "[t]he Ship Mortgage Act contains no direct expression of congressional intent to preempt state law

---

[2] Although neither party contests the definition or scope of the term "civil action," Federal Rule of Civil Procedure 3 states that "[a] civil action is commenced by filing a complaint with the court."  Additionally, Black's Law Dictionary defines a civil action as "[a]n action brought to enforce, redress, or protect a private or civil right; a non-criminal litigation."  Black's Law Dictionary 30 (7th ed. 1999).

allowing for self-help repossession and resale." *Id.*; *see also Knauss v. Dwek*, 289 F. Supp. 2d 546, 553 n.6 (D.N.J. 2003) ("there exists a line of cases holding that state law procedures that are not inconsistent with the Ship Mortgage Act, such as extrajudicial self-help remedies, are not preempted."). Therefore, the Court concludes that the Lien Act does not preempt Washington's self-help remedy of summary foreclosure.

Next, the Court must determine whether the Lien Act implicitly pre-empts the state statute. "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law . . . ." *Cipollone*, 505 U.S. at 516 (citations omitted). "Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' . . . or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . ." *Hillsborough County, Fla. v. Auto. Med.*, 471 U.S. 707, 713 (1985) (citations omitted). Naknek has had multiple opportunities to provide the Court with an actual conflict and has failed to do so. In this round of briefing, Naknek provides two arguments in support of a conflict. First, Naknek argues that extrajudicial remedies only apply to consensual agreements. Dkt. 68 at 15–16. While the majority of cases cited to the Court involve consensual agreements, Naknek fails to provide any precedent, binding or persuasive, that stands for the proposition that a consensual agreement must be entered into before self-help remedies may be pursued. Therefore, the Court declines to find a conflict in the absence of a consensual agreement.

Second, Naknek argues that the Washington Supreme Court opinion in *Farwest Steel Corp. v. DeSantis*, 102 Wn. 2d 487 (1984) "is controlling authority for the

proposition that [Washington's chattel lien statute] is preempted by federal law." Dkt. 68 at 16. Jones, however, correctly distinguishes *Farwest* because the plaintiff in that case attempted to enforce his liens judicially, which is explicitly pre-empted by federal law. *Farwest* is not on point for extra-judicial remedies. Moreover, contrary to Naknek's position, state court opinions are not controlling authority on the interpretation of federal law. Therefore, the Court declines to find a conflict based on *Farwest*.

In the absence of any apparent conflict, the Court must assess whether Washington's chattel lien statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . ." *Hillsborough*, 471 U.S. at 713. "The passage of the Ship Mortgage Act came about primarily from the necessity of affording substantial security to persons supplying essential financing to the shipping industry." *Merchants & Marine Bank v. The T. E. Welles*, 289 F.2d 188, 193-94 (5th Cir. 1961). "The purpose of Congress was to create a means of enforcing mortgages in admiralty in order to promote ship financing." *Dietrich*, 72 F.3d at 1514. Because there is no vessel mortgage at issue in this case, allowing Jones to utilize self-help means would not create an obstacle to the intention of Congress. Therefore, the Court concludes that Washington's chattel lien summary foreclosure statute does not conflict with the Maritime Lien Act.[3]

---

[3] The Court was previously persuaded that transfer of title procedures according to federal regulations may create a conflict between the state and federal statutes. The Court, however, agrees with Jones that summary foreclosure and title transfer and registration with the Coast Guard are mutually exclusive actions. Dkt. 64 at 16–17. Moreover, the Coast Guard

Finally, the Court must assess whether "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone*, 505 U.S. at 516. While maritime issues are usually federal issues, Congress has not occupied the field such that there is no room left for state law to supplement. For example, the Eleventh Circuit has concluded that the Maritime Lien Act is a "limited preemption" of state laws that may be supplemented. *Dietrich*, 72 F.3d at 1513. Moreover, Congress could have proclaimed that *all* state statutes conferring a lien on a vessel are pre-empted. Congress did not do so, and Naknek has failed to show that Congress left no room for state supplementation. Therefore, the Court concludes that Washington's chattel lien summary foreclosure procedure is not pre-empted by federal law.

### 2.   Washington Conflict

Jones moves for summary judgment on the issue of whether Washington's boat lien statute conflicts with Washington's chattel lien statute. The Court has already concluded that there is no conflict and, therefore, grants Jones's motion on this issue.

### 3.   Redemption

In Washington, the vessel owner may exercise a right of redemption "any time before the lien holder has disposed of collateral or entered into a contract for its disposition under this chapter." RCW 60.10.050. A "disposition" may be by public or

---

accepted Jones's transfer in this matter, and the Court must defer to the Coast Guard for the interpretation of its own regulations.

1  private sale that complies with the notice requirements of that section.  RCW
2  60.10.030(3).
3       In this case, Jones moves for summary judgment on Naknek's claim for
4  redemption.  Based on the clear language of the state statutes, redemption was available
5  any time before disposition.  It is undisputed that Naknek failed to timely exercise its
6  right of redemption.   Although this should be the end of the matter, Naknek argues that
7  "[r]edemption is available as a matter of law."  Dkt. 68 at 21.  Naknek contends that
8  redemption is "allowed by the summary foreclosure statutes at RCW 60.10.060."  *Id*. at
9  20.  That statute, however, only grants Naknek a post disposition "right to recover from
10 the lien holder any loss caused by a failure to comply with the provisions of this chapter."
11 *Id*.  Naknek's other argument is that RCW 6.23.020 allows redemption of real property of
12 up to a year after sale and that there is "no reason why redemption should apply before
13 sale in one case and after sale in another."   Dkt. 68 at 20.  It is unclear what Naknek
14 seeks to accomplish with this argument, but the differing redemption rights in
15 Washington statutes are beyond the scope of this matter.  Therefore, the Court grants
16 Jones's motion on Naknek's claim for redemption.
17       **4.     Verification of Jones's Liens**
18       Jones moves for summary judgment on Naknek's arguments that Jones's liens
19 were not properly calculated or validated.  Dkt. 64 at 22.  These arguments, however,
20 have not ripened into actual claims.  *See* Dkt. 1.  Naknek was afforded the opportunity to
21 attack Jones's claims before and after the disposition.  In fact, Naknek could have
22 restrained the sale of the *SEAHORSE*, but chose not to do so.  RCW 60.10.060.

Regardless, Naknek has not moved to amend its complaint and these claims are not before the Court. Therefore, the Court denies Jones's motion on this issue.

C. **Conclusion**

"While federal law reigns supreme in admiralty matters, it does not occupy the entire field." Dkt. 74 at 7. The Court agrees. Unfortunately for Naknek, they chose not to restrain the summary proceeding and are left with no federal remedy. In the unique case where there is no vessel mortgage and the parties dispute the amount of pay due for work and other services, the Maritime Lien Act does not pre-empt the state self-help remedies. Therefore, Jones is entitled to judgment on Naknek's claims. Furthermore, the *SEAHORSE* shall be released to Jones free of any Court-imposed conditions.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Jones's motion for summary judgment (Dkt. 64) is **GRANTED in part** and **DENIED in part** as stated herein. The order releasing the vessel upon conditions is **VACATED** and the *SEAHORSE* shall be released to Jones, subject to a determination of any outstanding payments regarding the arrest and custody of the vessel. The parties shall submit a joint status report within one week informing the Court of the issues that remain for trial, if any.

Dated this 21st day of October, 2015.

BENJAMIN H. SETTLE
United States District Judge